Milligan, J.,
delivered the opinion of the Court.
This is an action on the case; brought by the defendant in error, in the Circuit Court of Bradley County, against the plaintiff in error, and six others. The summons issued to the Sheriff of Bradley, on the 18th of June, 1864, with counterparts to the Sheriffs of Hamilton and Meigs Counties, accompanied by ancillary attachments to all three of the counties.
The original summons was returned on the 26th of July, executed as to J. M. Bates, one of the defendants, and “not found” as to the others. The counterpart to Hamilton was returned non est inventus, and to Meigs, indorsed, “ordered to be held up by the plaintiff.” The attachments were respectively returned, by the several Sheriffs to whom they issued, “levied on the lands of the defendants residing within their counties.”
At the September Term, 1864, to which the process was returnable, by leave of the Court, the plain *150 tiff filed his declaration, and laid his damages at '$25,000, to which Bates alone, plead “not guilty,” and gave notice of the several defenses upon which he would rely, on the trial.
Publication was ordered, and final judgment stayed for six months from that date.
At the January Term, 1865, “by consent of counsel,” the defendants, Bates, Smith, and Boggess, were allowed until the next term to plead; and, at the May Term, 1865, a nolle prosequi was entered as to the defendants, Bates and Smith, and a judgment by default, taken, as to all other defendants. At the same term, a writ of inquiry was awarded, and executed by a jury of Bradley County, who assessed the plaintiff damages at $22,500. Upon this verdict, judgment final, was pronounced, and the lands of the defendants seized by the attachments, and ordered to be sold.
Afterwards, at the September. Term, 1865, the plaintiff "in error, Abijah Boggess, presented his petition, supported by the affidavits of W. L. Adams and Thomas L. Cate, praying that the judgment by default, be set aside, and for nothing held. The Court refused the application; from which Boggess alone, appealed in error to this Court.
None of the parties, except the plaintiff in error, complained of the judgment of the Court below; and as to any questions which may arise as to them, we have, at present, nothing to do.
Boggess • alone prosecuted this appeal; and the question is, whether the judgment is valid as to him; for if so, notwithstanding it may be void as to the *151 other defendants, he can take no advantage of it: Bentley vs. Hurlthal, 3 Head, 378.
1. The principal error assigned, is, that there was no personal service of process upon the appellant. This question arose in the case' of Swan vs. Roberts, (Manuscript,) at the last term of this Court, at Knoxville, in which it was held that an ancillary attachment, when lawfully issued, and duly levied on the property of the defendant, in actions for torts brought, had the same effect as an original attachment. This holding, however, was under the requirements of the fourth section of the Schedule of the amended Constitution, ratified the 22d of February, 1865, and applicable only to actions of tort previously brought. The principles of that case are applicable to this, and decisive of the objections now under consideration.
2. But it is insisted, as the attachment is the foundation of the jurisdiction of the Court, that the return should show that search was made, and no personal property- found, before it could be lawfully levied upon the real estate of the plaintiff in error
The ground upon which the attachment issued, as laid in the affidavit, is, that the defendants, Carmichael, Brown, Boggess, and Luttral, “so abscond and conceal themselves, that the ordinary process of law cannot. be served upon them.”
The attachment following the allegations, in the affidavit, recites, upon its face, the institution of the suit by summons — its nature, the tribunal in which it is pending, the amount of damages claimed in the action, *152 and that the cause of action is just. No irregularity appears in the issuance of the auxiliary process, and none is complained of in its execution, except the return of the Sheriff. The attachment issued on the 18th of June, 1864, and two days thereafter, came to the hands of the Sheriff, which he returned on the 2d of August following, indorsed, “attached the • following described lands, to-wit, of Abijah Boggess, bounded,” etc.
Is this levy sufficient to confer jurisdiction upon the Court, to enable it to take cognizance of the cause, and pronounce a valid judgment in it? In other words, can an attachment be levied on real estate at all, under An Act of Assembly, without first showing, in the officer’s return, that search was made, and no personal property found? This is the question. .
The Act of 1794, chap. 1, sec. 23, Car. & Nich., 292, among other things, directs, that, “All process heretofore issued against goods and chattels, lands and tenements, shall, for the future, issue in the same manner; and such as issued only against goods and chattels, shall hereafter issue against lands and tenements, as well as rgoods and chattels; and the Sheriff, upon such attachment, execution, or other process, shall proceed to levy the same upon the goods and chattels of the defendant,- in the first instance, if any there be; but if, to the best of his knowledge, there be no such goods and chattels, or not sufficient to answer the plaintiff’s demand, he shall execute the same upon the lands and tenements, to the amount of the whole debt, or of so much as may remain, more than the value of the goods and chattels, so found.”
*153 The substance of this Statute has been carried into . the Code. Section 3498 provides, “That the officer to whom the writ is directed, shall attach and lake into his possession, in the first instance, so much of the personal property of the defendant as may be necessary to meet the exigency of the writs; and shall levy the attachment, when necessary, upon the defendant’s real estate.”
The provisions of the Act of 1794, which renders land alienable by executions, was held in the case of Crowder vs. Sims, 7 Hum., 257, to be directory to the Sheriff to proceed, first, against the goods and chattels of the defendant in the execution. This opinion, although not overruled, by the case of Hassell vs. The Southern Bank of Kentucky, 2 Head, 381, is incidentally referred to in no very- approving terms. But whether this Statute be construed to be imperative, or merely directory, in cases of executions, we do not deem it material now to determine. There is a well defined distinction between a fieri facias and an attach-* ment, both in their operation .and effect upon the title to the property levied upon, and the rights of the parties under the levy. A - levy of the former upon personal property, to the amount of the execution, has been holden a satisfaction; because it is an actual divestiture of title; and in case of lands, it is. the inception of a right to the satisfaction of a judgment already rendered that cannot be defeated but by the act of the creditor himself: Miller vs. Estill, 8 Yer., 460, et passem. But a levy of the latter, either upon real or personal property, is followed by *154 no such results. An attachment is a proceeding in personam, and not in rem. Its objects are to secure the creditor, and compel the appearance of the debtor.
If the property seized be replevied, security must be given for the debt, or for the value of the property attached. If not, it remains in the custody of the ■law for the satisfaction of the judgment, which may thereafter be obtained upon execution. The levy of an attachment does not divest the property of the debtor, it merely creates a specific lien upon the property attached; and if the debtor die pending the suit, not having replevied, the property passes, subject to the lien, to his personal representatives, real or personal: 3 Hum., 139; 6 Hum., 151. The property attached cannot be sold until after personal judgment against the debtor: lb. After judgment, the plaintiff has a right to sue out a writ of venditioni exponas to sell the property held bound by the lien of the attachment; or he may resort to the ordinary writ 'of fieri facias, and cause it to be levied on the property attached, or such other property of the defendant as may be found: Green vs. Sharer, 3 Hum., 139; Perkins’ Heirs vs. Norwell, 6 Hum., 151, Snell and McGavock vs. Allen, 1 Swan, 208.
Thus, it is apparent there is a wide difference, both . in the object and effect of an attachment, and a writ of fieri facias; and the Statutes governing the one, in many important particulars, are not applicable to the other. By the express language of the Code, section 3477, the attachment law is required to be liberally construed; and we are aware of no authority, or valid *155 reason, that justifies us in giving to section 8498, Before referred to, the limited construction contended for in argument. By the terms of this section, it is made the duty of the officer levying the attachment, first-, to attach and take into his possession, so much of the personal property of the defendant as may he necessary to meet the exigencies of the writ, and when necessary, to levy upon his real estate. The Sheriff, in such cases, is clothed with a reasonable discretion, which he is often compelled hastily to exercise, and doubtless he is responsible to the parties to the suit, for the manner in which he does exercise it. But in the present case, the writ, as required by the Statute itself, Code, sec. 3473, issued against the “estate of the defendants,” (which in its unrestrained signification comprehends both real and personal property,) and in the absence of any positive limitations in the Act itself, restraining the officer from levying upon real property, until he has first exhausted all the personal property, or failed, after search, to find any, we feel constrained to hold, that the levy and return of the Sheriff was sufficient, to confer jurisdiction on the Court, and the judgment by default was properly taken.
This view of our own Statute, is corroborated by the general doctrine, as laid down in Drake on Attachment, sec. 233. It is there stated, that, “It may be considered a sound doctrine, that in the absence of any positive limitations of the right of attachment, real estate may be as well attached as personalty; and that the existence,- within the knowledge of *156 the officer, of a sufficiency of the latter which he might seize, will not invalidate an attachment of the former.”
This was so' held where a Statute existed directing attachments to be served by attaching the goods and chattels of the defendant, or if none could be found, by attaching his person or land: Isham vs. Downer, 8 Caun., 282; Weathers vs. Mudd, 12 B., Monroe, 112.
The fact that the writ of inquiry was executed at the same term at which the judgment by default was taken, and a judgment final rendered, constitute no sufficient ground for setting aside - the judgment. The affidavit upon which the attachment issued, shows that the plaintiff in error is not a non-resident, but that he so absconds and conceals himself that the ordinary process of the law cannot be served upon him. In such cases, under the Code, sec. 3527, the Court hearing the cause is clothed with a discretionary power to stay final judgment, not exceeding twelve months, or to render it without delay. This is purely a legal discretion, resting with the presiding Judge, and this Court would be slow to reverse for its exercise, unless it was made clearly to appear that it was illegally and oppressively exercised. The damages assessed by the jury that executed the writ of inquiry are heavy; but the record before us does not disclose the evidence upon which they were estimated. And this Court, in the case of Thompson vs. French, 10 Yer., 459, hold, that excessiveness of damages, unless very gross and palpable, is not a cause of reversing a judgment *157 below. And in the Case of Martin vs. England, 5 Yer., 313, 318, it is said that -the question as to the excessiveness of damages cannot be determined by a court of errors, unless the record contains the facts upon which the party predicates the complaint of ex-cessiveness.
This case falls within these principles, and leaves us without anything in the record to judge of the propriety of the jury’s assessment of damages.
Other objections are taken which. we do not regard as material. They are merely formal, and do not effect the merits.
Affirm the judgment.